UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

ERIC HO,                                            Civ. No. 12-126 (DWF/LIB)

v.                                                  **REPORT AND RECOMMENDATION**

UNITED STATES, et al.

               Defendants.

---

      This matter came before the undersigned United States Magistrate Judge upon

Defendants' Motion to Dismiss or its Alternative Motion for Summary Judgment [Docket No.

8], and upon Plaintiff's Motion to Amend Complaint [Docket No. 23].  The case has been

referred to the Magistrate Judge for an order and report and recommendation pursuant to 28

U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court held a hearing on the motions on November

27, 2012.  For reasons outlined below, the Court orders that Plaintiff's Motion to Amend

Complaint [Docket No. 23] be **GRANTED,** and the Court recommends that Defendants' Motion

to Dismiss and its Alternative Motion for Summary Judgment [Docket No. 8] be **GRANTED in**

**part** and **DENIED in part**.

I.      **BACKGROUND**

      Plaintiff Eric Ho is an inmate at the Federal Medical Center in Rochester, Minnesota

(FMC Rochester.  (Compl. [Docket No. 1] at ¶ 4).  Plaintiff suffers from Machado-Josephs

Disease (MJD), a progressive condition that results in lack of muscle control and coordination in

the extremities, eventually leading to paralysis.  (Id. at ¶ 12).  This lawsuit arises from an

accident that occurred at FMC Rochester on May 28, 2009.[1]  Plaintiff alleges that, while he was

sitting on a porcelain toilet in the Unit 9-3 bathroom, he reached back to flush the toilet and the

toilet crumbled apart, causing him to fall to the ground amid the debris of the shattered toilet.

(Id. at ¶¶ 14-16).  Both parties acknowledge that Plaintiff suffered severe injuries, particularly to

his right arm, due to the fall and resulting cut from the porcelain shards of the shattered toilet.

(Id. at 17-18, 22; Def.'s Mem. Supp. Mot. Dismiss [Docket No. 10] at 4, ¶ 4; 6, ¶ 7).  The

bathroom had been equipped with an emergency alarm, operated by a pull cord, (Compl. [Docket

No. 1] at ¶ 13), however, the cord was cut so that only about an inch of cord hung from the

device, with no ball or other attachment at the end that would make the cord easier to grab.  (Id.).

Plaintiff alleges that he was unable to pull the cord with his blood-slickened fingers, and that he

had to pinch a porcelain shard from the toilet against the cord in order to operate the alarm.  (Id.

at ¶ 18).

    The first person to respond was inmate and nursing attendant Fairrick Hardaway (Mr.

Hardaway), who saw that Plaintiff was injured and left to get help.  (Id. at ¶ 19; Def.'s Mem.

Supp. Mot. Dismiss at 4, ¶ 4).  After "a short period," FMC Rochester staff members responded

and applied pressure to Plaintiff's wounds; eventually they called an ambulance to transport

Plaintiff to St. Mary's Hospital.  (Id. at ¶¶ 20-21).

    In his Complaint, Plaintiff named as defendants the United States, FMC Rochester

Warden Brian Jett (Warden Jett) (individually and in his official capacity), and John/Jane Doe

Federal Employees of the U.S. Bureau of Prisons (BOP) and/or of FMC Rochester (individually

and in their official capacities).  (Id. at 1).  Plaintiff's complaint alleged violations of the Federal

---

[1] The Complaint mistakenly states that the incident occurred on March 28, 2009.  (Compl. [Docket No. 1] at ¶ 14).
However, in the filings that accompany his Motion to Amend Complaint, Plaintiff acknowledges that the correct
date is May 28, 2009.  (See Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 26] at 1; Ex. Mot. Am. Compl.
[Docket No. 43] at ¶ 17).

Tort Claims Act (FTCA), (Id. at ¶¶ 23-29); asserted a § 1983 <u>Bivens</u>[2] action, (Id. at ¶¶ 30-34); made a <u>Monell</u> claim,[3] (Id. at ¶¶ 35-40); and alleged conspiracy under 42 U.S.C. §§ 1983 and 1985. (Id. at ¶¶ 41-43).

This matter comes to the Court on Defendants' Motion to Dismiss, or its Alternative Motion for Summary Judgment. [Docket No. 8]. Plaintiff opposes that motion, and further in response he has moved for leave to amend his complaint. [Docket No. 23].

## II.    DISCUSSION

### A.  Plaintiff's Motion to Amend Complaint

#### 1.  Standard of Review

The Federal Rules of Civil Procedure allow twenty-one (21) days after service during which Plaintiff may freely amend his complaint. Fed. R. Civ. P. 15(a)(1)(A). If a party does not seek to amend its Complaint within the time allowed by Rule 15(a)(1), it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule further provides that "[t]he court should freely give leave when justice so requires." Id. The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," <u>Sherman v. Winco Fireworks, Inc.</u>, 532

---

[2] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).
[3] Alleging a pattern, practice and conspiracy to engage in negligent conduct that deprived Plaintiff of his civil rights.

F.3d 709, 715 (8th Cir. 2008), the Court begins "with a presumption of liberality." DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998).

Plaintiff's motion to amend is at least partially directed at curing some of the defects identified in the motion to dismiss. "The Eighth Circuit has held that, as a procedural matter, it is plainly erroneous for a district court to grant a motion to dismiss, and then to deny a pending motion to amend as moot, without consideration of the merits of the motion to amend." Besett v. Wadena County, Civ. No. 10-934 (JRT/LIB), 2010 U.S. Dist. LEXIS 137112, at *15-16 (D. Minn. Dec. 7, 2010) (Brisbois, M.J.).[4]

### 2. Analysis

Plaintiff seeks to amend his Complaint by 1) withdrawing any and all claims against Warden Jett; 2) withdrawing any and all "official capacity" claims against individual federal employees; 3) withdrawing the Monell claim; 4) naming three FMC Rochester employees (Safety Manager Jonathan Teske,[5] Clinical Nursing Supervisor Marian O'Donnell, and Clinical Nurse Stephanie Hartung);[6] and 5) asserts new facts in support of his remaining claims. (Ex. Mot. Am. Compl. [Docket No. 43]).[7] Should this Court grant Plaintiff's motion to amend, the

---

[4] Citing Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002) (reversing order granting motion to dismiss, and remanding to the district court so that it could reconsider the motion to amend on the merits); Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F. Supp. 2d 640, 646 (N.D. Iowa 2006); Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp. 232, 239-40 (D. Del. 1992) (holding that plaintiff's filing of an amended complaint rendered the defendants' motion to dismiss the original complaint moot); Sallis v. Pavlak, Civ. No. 09-3614 (JMR/JGG), 2010 U.S. Dist. LEXIS 87831, at *8 (D. Minn. Aug. 25, 2010) (Rosenbaum, J.) (where a court is faced with both a motion to amend and a motion to dismiss the prior complaint for failure to state a claim, "the Court is advised to consider the motion to amend before deciding the motion to dismiss").

[5] Plaintiff misspells Mr. Teske's first name as Johnathan. (See Ex. Mot. Am. Compl. [Docket No. 43] at 1). In fact, Mr. Teske spells his name Jonathan. (See Decl. Teske [Docket No. 18] at 1).

[6] Plaintiff still brings John/Jane Doe complaints against unnamed Federal Employees in their individual capacities. (Ex. Mot. Am. Compl. [Docket No. 43] at 1). Additionally, Plaintiff has advised the Court that he "anticipates that he will need to amend the Complaint at least one more time as discovery has not started and during discovery it is anticipated that plaintiff will learn the identities of other defendants." (Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 26] at 2). The current Order granting Plaintiff's Motion to Amend Complaint [Docket No. 23] applies only to the proposed amendment that has been provided to the Court at the present time; should Plaintiff desire to amend the Complaint again, he must bring the proper motion at the proper time.

[7] Plaintiff submitted this Exhibit, pursuant to Local Rule 15.1, as showing of how his Amended Complaint, should the Court allow one, would differ from his original Complaint [Docket No. 1].

following claims would remain: 1) a Federal Tort Claims Act claim against the United States; 2) Bivens claims against Mr. Teske, Ms. O'Donnell, Ms. Hartung, and other John/Jane Doe Federal Employees (collectively, or in any combination, "individual Defendants"); and conspiracy claims under 42 U.S.C. §§ 1983 and 1985 against individual Defendants. (Id.) Plaintiff asserts that his proposed amendment at this stage, before discovery has begun, would not prejudice Defendants. (Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 26] at 2).

"A district court can refuse to grant leave to amend a pleading only where it will result in 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000) (citing Foman, 371 U.S. at 182). It is the opposing party's burden to show that it will be unfairly prejudiced. Id. Defendants do not argue that they would be prejudiced by Plaintiff's proposed amendment; rather, Defendants argue that, in light of a potential affirmative defense of qualified immunity, the Court should deny the motion to amend. (Defs.' Resp. Mot. Am. Compl. [Docket No. 38], at 3-4).[8]

Consequently, the Court orders that the Plaintiff's Motion to Amend Complaint [Docket No. 23] be **GRANTED**. The Plaintiff is ordered to file his Amended Complaint, making no changes from what is represented in Plaintiff's Exhibit to Motion to Amend Complaint [Docket No. 43], via CM/ECF no later than **December 21, 2012**.

---

[8] For reasons set forth more fully in Part II.C.2.a, infra, the Court does not find this argument compelling.

**B. Defendants' Motion in the Alternative for Summary Judgment**

Defendants have submitted materials to the Court outside of the complaint (or even the Amended Complaint) in support of their alternative motion for summary judgment. Fed. R. Civ. P. 12(d).[9]

Summary judgment is appropriate only when the evidence demonstrates that there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable party could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

However, "summary judgment is proper only after the non-movant has had adequate time to engage in discovery." Weber v. Travelers Home & Marine Ins. Co., Civ. No. 10-2142 (RHK/LIB), 2011 U.S. Dist. LEXIS 20233, at *3 (D. Minn. Mar. 1, 2011) (Kyle, J.) (quoting Stanback v. Best Diversified Prods., Inc. 180 F.3d 903, 911 (8th Cir. 1999); Fed. R. Civ. P. 12(d). Here, discovery has not begun, nor have Defendants even made any initial disclosures under Fed. R. Civ. P. 26(a)(1). Thus a grant of summary judgment would be premature at this stage. Id. Additionally, Plaintiff's filings and predominantly his arguments before the Court strongly suggest that he feels he needs to be able to conduct at least some discovery to develop a record to prepare its opposition to any dispositive motion under Fed. R. Civ. P. 56. Thus, the motion for summary judgment is premature. Fed. R. Civ. P. 56(d).

Consequently, the Court recommends that the Defendants' Motion in the Alternative for Summary Judgment [Docket No. 8] be DENIED without prejudice. Defendants may refile this

---

[9] Defendants have not served an Answer in the case. Accordingly, their present motions are in lieu of an Answer as provided for in Fed. R. Civ. P. 12.

motion at the appropriate time following a reasonable opportunity for Plaintiff to conduct some discovery in this case.[10]

### C. Defendants' Motion to Dismiss

The Court next considers whether Plaintiff's Amended Complaint survives Defendants' Motion to Dismiss. [Docket No. 8].

#### 1. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

---

[10] Because Defendants' alternative motion for summary judgment is denied without prejudice, its submissions to the Court outside of the complaint will not be considered in assessing their motion to dismiss under Fed. R. Civ. P. 12(b)(6).

'entitlement to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 664.

**2. Analysis**

**a. Bivens Claims**

Plaintiff alleges that individual Defendants are liable under Bivens for violations of his Fifth Amendment right to life, liberty, and property, and his Eighth Amendment right against cruel and unusual punishment.  (Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 38-40).  In particular, Plaintiff argues that certain failures to act by the individual Defendants constitute "deliberate indifference" and, therefore, constitute violations of the Eighth Amendment.  (Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 10).[11]

"A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors."  Aldaco v. Holder, Civ. No. 10-590 (JRT/LIB), 2011 U.S. Dist. LEXIS 22780, at *7-8 (D. Minn. Jan. 7, 2011) (citing Bivens, 403 U.S. at 395-97).  "A Bivens claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct.  A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law."  Id. at *8.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on persons convicted of crimes.  See Rhodes v.

---

[11] Plaintiff initially argues that individual defendants infringed his Fifth Amendment rights to life, liberty, and property.  (See Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 39-40).  However, Plaintiff does not in any way identify how his Fifth Amendment rights are violated.  Defendants rightly object that "[t]hese overly vague allegations do not withstand scrutiny."  (Defs.' Mem. Supp. Mot. Dismiss [Docket No. 10] at 19).  Plaintiff's Response to the motion to dismiss argues only his Eighth Amendment claim without discussing any alleged violations of his Fifth Amendment rights.  (Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 10-12).  The Court, therefore, considers Plaintiff's Fifth Amendment claim abandoned.  See Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985) ("A party's failure to raise or discuss an issue in [its] brief is to be deemed an abandonment of that issue.").

Chapman, 425 U.S. 337, 344-46 (1981).  Any "deliberate indifference to serious medical needs of prisoners" would constitute cruel and unusual punishment and, therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see also Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs" (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  To demonstrate the "deliberate indifference" necessary for an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need.  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000).

Only deliberate indifference to Plaintiff's serious medical needs would violate the Eighth Amendment.  Therefore, the issue in this case is whether Plaintiff has alleged facts sufficient to create a "facial[ly] plausib[le]" claim against the individual Defendants.  Iqbal, 556 U.S. at 662.[12]

---

[12] Defendants initially argued that Plaintiff failed to exhaust his administrative remedies before filing his lawsuit, and therefore, his Bivens claims should be dismissed under Fed. R. Civ. P. 12(b)(1).  (Defs.' Mem. Supp. Mot. Dismiss [Docket No. 10] at 11-12).  Plaintiff acknowledges that he did not exhaust administrative remedies in regard to his Bivens claims.  (See Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 6-10).  Plaintiff now asserts that, as a result of his injuries, "[h]e was not able to use his hand to fill out the paperwork to file an administrative appeal."  (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 26).  Plaintiff further argues now that two correctional officers, whom he has *not* named as defendants, told him "not to initiate administrative proceedings" and threatened him such that he feared to do so.  (Id. at ¶ 27).  Plaintiff argues that these facts excuse him from complying with the requirement that he exhaust administrative remedies.  (Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 8-10).

Because the Court finds that Plaintiff has failed to assert facts sufficient for his Bivens claims to survive the Defendants' 12(b)(6) motion to dismiss, we need not address whether Plaintiff should be excused from the requirement that he exhaust his administrative remedies.  However, were the Court to consider this question, we likely would conclude that Plaintiff should not be excused, and that his claims could also be dismissed for failure to exhaust his administrative remedies.  As an initial matter, BOP regulations provide remedies for both of the hurdles Plaintiff claims to have encountered.  (See 28 C.F.R. § 541.16(a)-(b) (allowing an inmate to have someone else fill out a grievance form on his behalf, and allowing extra time for an inmate who can demonstrate a valid reason for delay); 28 C.F.R. § 542.14(d) (providing procedure for inmates who fear retaliation by local prison officials to file a grievance through a regional office)).  Plaintiff asserts no facts in his Amended Complaint to suggest why *these* alternatives were not available to him.

Plaintiff's claim against Defendant Teske is simply illogical. Plaintiff acknowledges that "deliberate indifference" is the appropriate standard, and he argues that "[f]ailure to fix the cord was deliberate indifference." (Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 10-11). To plead deliberate indifference, Plaintiff first must show that Defendant Teske *knew of Plaintiff's medical need*. See Jolly, 205 F.3d at 1096; Baez v. Rosemack, Civ. No. 09-2121 (RHK/LIB), 2011 U.S. Dist. LEXIS 103513, at *13 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.). For purposes of this claim, Plaintiff's medical need does not refer to MJD, the chronic condition that is the reason that he is housed at FMC Rochester. See Part I, supra. The medical condition at issue in this inquiry is the injury (or injuries) suffered by Plaintiff as a result of the incident on May 28, 2009. Thus, any knowledge of Plaintiff's medical condition could only arise during or after the May 28, 2009, accident that caused his injuries. However, the only facts in the Amended Complaint that Plaintiff asserts in an attempt to demonstrate Defendant Teske's deliberate indifference – namely, his assertion that Defendant Teske knew for "months" that the cord on the Unit 9-3 bathroom emergency alarm was cut and did not repair it – occurred *before* the incident

---

Furthermore, the Eighth Circuit has recognized only two circumstances that excuse an inmate from the exhaustion of administrative remedies requirement: "when officials have prevented prisoners from utilizing the [administrative] procedures," Gibson v. Weber, 431 F.3d 399, 341 (8th Cir. 2005) (citing Miller v. Norris, 247 F.3d 736 (8th Cir. 2001)), and "when officials themselves have failed to comply with the grievance procedures." Id. (citing Foulk v. Charrier, 252 F.3d 687 (8th Cir. 2001). Plaintiff acknowledges that he did not pursue any administrative remedies, so he cannot argue that prison officials failed to comply with grievance procedures. Additionally, even accepting as true Plaintiff's assertion that he was threatened and that he feared retaliation, the Eighth Circuit does not excuse inmates from meeting the exhaustion requirement because of the inmate's "subjective belief" that administrative procedures are not available. Gibson, 431 F.3d at 341; Sheridan v. Rios, Civ. No. 09-844 (DWF/FLN), 2010 U.S. Dist. LEXIS, at *6 (D. Minn. Sept. 28, 2010) (Frank, J.) ("Administrative remedies are only unavailable when prison officials *prevent* an inmate for pursuing the grievance procedure (emphasis added)).

Plaintiff cites Macias v. Zenck, 495 F.3d 37 (2d Cir. 2007), and Hale v. Rao, 768 F. Supp. 2d 367 (N.D.N.Y. 2011) for the proposition that "[w]hen a prisoner is threatened by correctional officers, then defendants waive their right to raise the exhaustion of administrative remedies argument." (Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 9). Neither of these cases made such a specific holding. In Macias, the court considered the plaintiff's allegation that he was threatened, but nevertheless found that he had failed to exhaust his administrative remedies because the alleged threats came after his deadline to file a grievance. 495 F.3d at 45. In Hale, the inmate alleged that he was threatened, but there also was evidence that "[p]rison staff threw out a grievance filled out by another inmate on Hale's behalf, [and] refused to provide him with the materials he needed to file another grievance." 768 F. Supp. 2d at 577. Given the *actual* interference with Hale's claims by prison officers, the Court's decision to excuse Hale from the exhaustion requirement can hardly be attributed to his mere subjective allegation that he was threatened.

and do not in any way relate to Plaintiff's medical needs that arose as a result of the incident on May 28, 2009. Even accepting these facts as true, it is illogical to argue that Defendant Teske knew of Plaintiff's May 28, 2009, injuries and acted with deliberate indifference to those injuries by failing to repair the emergency alarm cord *before those injuries had even occurred*.

Any <u>Bivens</u> claim Plaintiff may bring against John/Jane Doe Federal Employees for failure to stock tourniquets, (<u>see</u> Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 11), fails for the same reason. Any decision regarding whether to keep a stock of tourniquets and, if so, where to keep them must have been made before the May 28, 2009, accident in which Plaintiff was injured. Even accepting as true that "Defendants failed to have tourniquets available," (<u>Id.</u>), it is illogical to argue that John/Jane Doe Federal Employees knew of Plaintiff's May 28, 2009, injuries and acted with deliberate indifference by failing to stock tourniquets *before those injuries had even occurred*.

Furthermore, assuming that Plaintiff's claims of deliberate indifference turn instead on allegations that prison officials failed to provide timely and appropriate medical care after he was injured in the Unit 9-3 bathroom on May 28, 2009, he must show "more than negligence, more even than gross negligence . . . ." <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995). Rather, "[d]eliberate indifference is akin to criminal recklessness." <u>Drake v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." <u>Baez</u>, 2011 U.S. Dist. LEXIS 103513, at *13 (citing <u>Coleman v. Rahija</u>, 114 F.3d 778, 785 (8th Cir. 1997)).

Here, in his Amended Complaint, Plaintiff alleges simply that Defendants O'Donnell, Hartung, and John/Jane Doe Federal Employees did not immediately respond to the emergency alarm from the Unit 9-3 bathroom on May 28, 2009, (Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 22-23), and that their delay constitutes deliberate indifference and, thus, violates the Eighth Amendment. (Id. at ¶ 40; see also Pl.'s Resp. Mot. Dismiss [Docket No. 32] at 10-11).

Even accepting as true the facts Plaintiff has alleged, his claim does not meet the "deliberate disregard" prong of the Eighth Amendment analysis sufficient to survive a 12(b)(6) motion. None of Plaintiff's assertions suggest that Defendants' actions were "akin to criminal recklessness." Drake, 445 F.3d at 1042. It is undisputed that Plaintiff received medical treatment after the accident on May 28, 2009. In fact, at the hearing on November 27, 2012, Plaintiff's counsel agreed that the treatment provided by Defendants likely saved Plaintiff's life. Plaintiff merely contends that his treatment was delayed because Defendants did not respond "immediately" to the emergency alarm. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 22-23).

"Delay in the provision of treatment . . . can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989). Where a plaintiff alleges that a delay in treatment violated his constitutional rights, "the objective seriousness of the deprivation should also be measured by reference to the effect of the delay in treatment." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997).

In this case, Plaintiff has not provided any specific assertions in his Amended Complaint as to the effect of the delay in treatment. Plaintiff alleges only generally that Defendants "did not immediately respond" to the emergency alarm. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 22-23). However, Plaintiff himself describes the delay as only "a short period." (Id. at ¶ 23).

Although Plaintiff's filings do not specify exactly how long this "short" delay lasted, at the hearing on November 27, 2012, Plaintiff's counsel stated that it was less than five minutes, and likely just "a couple minutes." Plaintiff has asserted no facts that would support his claim that he suffered any constitutionally significant harm from the "couple minutes" during which he did not receive treatment. Although the Defendants do not dispute that Plaintiff's injuries were serious and that he was in pain, "not every twinge of pain suffered as a result of delay in medical care is actionable." Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000).

In Baez, an inmate at FMC Rochester slipped in water that was leaking from an ice machine and fell on the floor, where he remained "for a long period of time" before anyone arrived to assist him. 2011 U.S. Dist. LEXIS 103513, at *1-2. After a nurse and a correctional officer found Mr. Baez, the nurse told him to go to his bed and rest. Id. at *2. Later that night, a different nurse examining Mr. Baez in his room noticed redness on his upper thigh and prescribed pain medication and topical ice, but did not order X-rays. Id. Mr. Baez called in sick for two days before X-rays were taken; those X-rays showed that he had a broken hip. Id. at *2-3. Additional X-rays taken at the Mayo Clinic showed that Mr. Baez had a broken right femoral neck bone (the bone that connects the femur to the hip). Id. at *3. Ultimately, Mr. Baez required four hours of surgery to insert pins and screws in his hip. Id. Mr. Baez asserted that he "was in severe pain" for three days as a result of the defendants failure to get X-rays immediately. Id. Additionally, at the time he brought his suit, Mr. Baez needed additional surgery to correct an error in the placement of the screws in his hip. Id. However, even this allegation of delay was insufficient to create a constitutional issue under the Eighth Amendment. Id. at *17-18.[13] In the

---

[13] "No evidence suggests that the Defendants completely ignored the Plaintiff's request, but rather the evidence simply suggests that the defendant medical personnel arguably may have initially underestimated the seriousness of his injury. . . . Nor has the Plaintiff presented any evidence from medical records or experts suggesting that the treatment given to him by the Defendants was so outside the reasonable standard of care for the medical profession

present case, even making reasonable inferences in favor of Plaintiff, the Court cannot conclude, from the paucity of facts he has alleged, that a delay of "a couple minutes" between the time he activated the emergency alarm and the time that Defendants provided him medical treatment constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. Cf. Baez, 2011 U.S. Dist. LEXIS 103513.

Even if the injury from the delay was sufficient to raise a constitutional concern, Plaintiff has failed to plead facts sufficient to establish that Defendants acted with deliberate indifference to Plaintiff's medical needs resulting from his injuries on May 28, 2009. Thus, to bring a facially plausible claim, Plaintiff must assert facts sufficient to show that Defendants had actual knowledge of *those injuries*, yet failed to reasonably respond. Id. at *13 (citing Coleman, 114 F.3d at 785). Plaintiff asserts that Defendants "did not respond to the emergency call light" that is activated by the emergency alarm.[14] However, the Plaintiff does not allege that the call light can mean only a medical emergency; indeed, while the call light does not specify the nature of the emergency, it just as likely can signal a fight among prisoners or a broken water pipe as a serious injury. In other words, Plaintiff's activation of the emergency alarm, which activated the call light, did not provide Defendants with *actual knowledge* of his immediate medical emergency. Rather, the first indication that Defendants got of Plaintiff's medical condition was from Mr. Hardaway shouting that Plaintiff "was bleeding to death." (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 23). Plaintiff, himself, asserts that Defendants "responded to Mr. Hardaway's pleas for help" and arrived in the Unit 9-3 bathroom "[a]fter a short period" – a

---

that it was criminal recklessness. . . . None of the facts asserted in the Plaintiff's Complaint or in his affidavits submitted in opposition to the Defendants' motion indicate that prison officials acted with 'deliberate disregard' to his apparent medical needs." Baez, 2011 U.S. Dist. LEXIS 103513, at *17-19.

[14] Plaintiff also states that Defendants "were deliberately indifferent, reckless, wanton, and shocking to the conscience and deprived Plaintiff of his civil rights, specifically . . . his right to be free from cruel and unusual punishment as secured under the . . . Eighth Amendment." (Id. at ¶ 40). These "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681; see also Twombly, 550 U.S. at 554-55.

period that Plaintiff's counsel described as merely "a couple minutes." Even accepting as true Plaintiff's assertion that Defendants did not immediately respond to the emergency call light, the facts asserted by Plaintiff suggest that Defendants did, indeed, respond quickly once they had actual knowledge of Plaintiff's injuries.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be GRANTED as it relates to Plaintiff's <u>Bivens</u> claims.[15]

### b. Conspiracy Claims

Plaintiff alleges that 1) Defendant Teske and other John/Jane Doe Federal Employees, knowing that the cords on FMC Rochester's emergency alarms had been tampered with, "conspired together and agreed to not repair the emergency alarm cord;" (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 43); and that 2) Defendants Ms. O'Donnell, Ms. Hartung, and other John/Jane Doe Federal Employees "conspired to delay in responding to the emergency alarm when it was pulled by Plaintiff." (<u>Id.</u> at ¶ 44). Plaintiff alleges that these conspiracies deprived him of "his liberty, life, and property without due process of law, and his right to equal protection under the laws, and the due course of justice was impeded in violation of the Fifth and Eighth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 & 1985. (<u>Id.</u> at ¶ 45).

### i. § 1983 Claim

Plaintiff's Section 1983 conspiracy claim fails on its face. "By its terms, § 1983 applies only to state actors and thus cannot found a claim against federal officials or agencies." <u>Solliday v. Nalley</u>, Civ. No. 11-2350 (JJG/MJD), 2012 U.S. Dist. LEXIS 126008, at *1-2 n.1 (D. Minn. July 27, 2012) (Graham, M.J.); <u>see also</u> <u>Davis v. United States</u>, 439 F.2d 1118, 1119 (8th Cir.

---

[15] Because the Court concludes that Plaintiff, with regard to his <u>Bivens</u> claims, has failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the Court need not reach at this time Defendants' argument that these claims should be dismissed because of the individual Defendants' qualified immunity.

1971) (per curiam) ("By its plain language [Section 1983] does not authorize redress against the United States."). "An alleged victim of a constitutional error by a federal official must bring his or her claims pursuant to <u>Bivens</u> . . ., which 'is the federal analog to suits brought against state officials under' § 1983." <u>Solliday</u>, 2012 U.S. Dist. LEXIS 126008, at *2 n.1. Here, as in <u>Solliday</u>, a Section 1983 claim is improper because Defendants are federal employees. <u>See Id.</u>[16]

Even if this Court were to construe Plaintiff's Section 1983 claim as a <u>Bivens</u> claim, it would fail for three reasons. First, Plaintiff already separately alleges that Defendants were negligent in failing to repair the emergency alarm and to respond immediately when the alarm was activated. (<u>See</u> Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 31-32). In effect, through his conspiracy claim Plaintiff is arguing that the Defendants *conspired to act negligently*. "Federal courts considering the issue in civil cases have dismissed the idea that one can conspire to act unintentionally as a logical impossibility." <u>United States v. Mitlof</u>, 165 F. Supp. 2d 558, 564 (S.D.N.Y. 2001).[17]

---

[16] In <u>Solliday</u>, the plaintiff brought her claims *pro se*, and the court construed her Section 1983 claim as a <u>Bivens</u> claim. <u>Solliday</u>, 2012 U.S. Dist. LEXIS 126008, at *2 n.1. Here, where Plaintiff is represented by counsel, the Court need not correct errors in the complaint.

[17] The <u>Mitlof</u> court cited as examples <u>Wright v. Brooke Group Ltd.</u>, 114 F. Supp. 2d 797, 837 (N.D. Iowa 2000) ("because conspiracy requires an agreement to commit a wrong, there can hardly be a conspiracy to be negligent – that is, to intend to act negligently"); <u>Haskin v. R.J. Reynolds Tobacco Co.</u>, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998 (no civil conspiracy to commit reckless or negligent acts because they are unintended); <u>Sackman v. Liggett Group Inc.</u>, 965 F. Supp. 391, 394 (E.D.N.Y 1997) (same); <u>Sonnenreich v. Philip Morris, Inc.</u>, 929 F. Supp. 416, 419 (S.D. Fla. 1996) ("Logic and case law dictate that a conspiracy to commit negligence is a non sequitur"); <u>Rogers v. Furlow</u>, 699 F. Supp. 672, 675 (N.D. Ill. 1988) ("a conspiracy to commit negligence [is] a paradox at best"); <u>Campbell v. A.H. Robins Co., Inc.</u>, 615 F. Supp. 496, 500 (W.D. Wis. 1985) ("The real problem with the plaintiffs' theory . . . is that it is incomprehensible. Precisely how the defendants, or anyone else, can conspire to cause negligent harm . . . is inexplicable."). <u>See also</u> <u>Baublitz v. Peninsula Reg'l Med. Ctr.</u>, 2010 U.S. Dist. LEXIS 81791, at *20 (D. Md. Aug. 12, 2010) ("This Court would agree that one cannot agree or conspire to be negligent."); <u>In re Nat'l Century Fin. Enters., Inv. Litig.</u>, 504 F. Supp. 2d 287, 327 (S.D. Ohio 2007) ("It is impossible to conspire to commit negligence" (internal quotation and citation omitted)); <u>Belser v. Ammon</u>, 2005 Cal. App. Unpub. LEXIS 5149, at *7 n.4 (Cal. Ct. App. 1st Dist. June 14, 2005) ("The law does not recognize a conspiracy to commit negligence. A conspiracy by definition requires intentional agreement to commit or achieve a specific outcome. It is, in other words, an intentional tort. It is a non sequitur to speak of parties agreeing to fail to exercise due care. The authorities on this point are unanimous."); <u>Triplex Comm., Inc. v. Riley</u>, 200 S.W.2d 716, 719 n.2 (Tex. 1995) (given the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent"); <u>Lindsay v. Lockwood</u>, 625 N.Y.S.2d 393, 396 (Sup. Ct. Monroe Cty. 1994) ("there can hardly be a conspiracy to commit

Second, as discussed in Part II.C.2.a, <u>supra</u>, Plaintiff has failed to sufficiently plead facts to demonstrate that individual Defendants violated his constitutional rights. "Civil conspiracy requires an agreement to participate in unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action, but rather is sustainable only after an underlying tort claim has been established." <u>K & S Partnership v. Continental Bank, N.A.</u>, 952 F.2d 971, 980 (8th Cir. 1991) (internal quotation and citation omitted). Plaintiff cannot show that he suffered a constitutional harm as a result of Defendants' alleged agreement and action if, as discussed relative to his underlying <u>Bivens</u> claim, he cannot show that he in fact suffered any constitutional harm.

Third, Plaintiff has alleged no facts that would support his claim that the individual Defendants actually conspired. Plaintiff alleges only that Mr. Teske and unnamed Federal Employees "knew that the emergency alarms had been tampered with" because of inspections performed by FMC Rochester staff, and then merely concludes (without alleging any specific facts) that "Defendants Teske and Federal Employees conspired together and agreed to not repair the emergency alarm cord after it had been cut, thereby, putting inmates like Plaintiff at risk." (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 43). Plaintiff likewise only conlusorily alleges (without any specific facts articulated) that "Defendants O'Donnell, Hartung, and Federal Employees conspired to delay in responding to the emergency alarm when it was pulled by Plaintiff. The [sic] agreed not to respond quickly, and did not actually respond to the known emergency until after another inmate started yetlling and banging on the walls for help." (<u>Id.</u> at ¶ 44.)

---

negligence"). In criminal context, <u>see</u> <u>United States v. Sdoulam</u>, 398 F.3d 981, 987 (8th Cir. 2005) ("We agree with [defendant] that one cannot conspire to commit a negligent or unintentional act").

However, Plaintiff identifies *no facts* in his Amended Complaint to support the conclusory allegation that lead him to conclude that there was a conspiracy. Like the complaint in Iqbal, which alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, these "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681; see also Twombly, 550 U.S. at 554-55. The Court is "mindful that 'conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed.'" White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981) (quoting Sparkman v. McFarlin, 601 F.2d 261, 278 n.19 (7th Cir. 1979) (en banc) (Swygert, J., dissenting)). However, even though a plaintiff need not provide *direct* evidence of a conspiracy, he still must assert *some* evidence.[18] Here, Plaintiff has presented *no facts* that would support his attempted Section 1983 conspiracy claims.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be GRANTED as it relates to Plaintiff's Section 1983 conspiracy claims.

### ii. § 1985 Claim

"Unlike 42 U.S.C. § 1983, which requires that the offending action be done under the color of state law (meaning the law of one of the states comprising the Union), the scope of §

---

[18] In White, the plaintiff alleged that a state court judge, a prosecutor, and his own defense counsel conspired together to have him removed from the courtroom during jury selection for his trial. White's complaint stated that he instructed his attorney that he wished to be present during all aspects of his trial, including jury selection. Nonetheless, the judge allowed White to be removed from the courtroom and placed in a holding cell during jury selection, without providing any reason in the record for doing so. When White was returned to the courtroom, an all-white jury had been seated. White both objected to the all-white jury and requested that he be appointed a new attorney; the trial court refused to alter the jury, and denied White's request for new counsel. 649 F.2d at 652. The Court of Appeals concluded, based on the plaintiff's complaint, that he "state[d] sufficient facts to give rise to the inference that there was . . . a meeting of the minds[, and a]coordingly, the district court erred by dismissing White's complaint for lack of specificity. Id.

1985(3) is considerably broader and can reach conspiracies composed of federal officers or federal employees." Federer v. Gephardt, 363 F.3d 754, 758 (8th Cir. 2004).

A conspiracy claim must contain "allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding, and some factual allegations suggesting such a meeting of the minds." White, 649 F.2d at 561 (internal quotations and citation omitted). "The factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous." Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983). Because of the secretive nature of a conspiracy "[i]t is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed." White, 649 F.2d at 561 (internal quotation and citation omitted). However, dismissal is proper where a conspiracy claim under Section 1985 "allege[s] absolutely no facts to support [the] claim." McClain v. Kitchen, 659 F.2d 870, 872 (8th Cir. 1981).

Plaintiff's Section 1985 claims fail for two reasons. First, Plaintiff fails even to identify which of the three distinct subsections of Section 1985[19] he believes that Defendants violated. (See Ex. Mot. Am. Compl. [Docket No. 43] at ¶¶ 42-45). Even reading Plaintiff's filings in the light most favorable to him, the Court finds no assertions of fact in the Amended Complaint that would support claims under any of these three subsections. Nothing in Plaintiff's filings would support a reasonable inference of a conspiracy to prevent any FMC Rochester employee from doing his or her job, thus ruling out Section 1985(1); Plaintiff does not allege that any of the named individual Defendants, nor any John/Jane Doe Defendants, obstructed justice by

---

[19] Section § 1985(1) bars "[p]reventing [an] officer from performing duties." Section 1985(2) bars "Obstructing justice; intimidating [a] party, witness, or juror." Section 1985(3) bars "[d]epriving persons of [equal] rights or privileges."

intimidating a party, witness or juror, thus ruling out Section 1985(2);[20] finally, nothing in

Plaintiff's filings suggests that he was denied "of equal protection of the laws, or of equal

privileges and immunities under the laws," thus ruling out Section 1985(3).[21]

Second, just as with his Section 1983 conspiracy claims, Plaintiff alleges *no facts* that

would support his conclusory allegations that Mr. Teske, or Ms. O'Donnell and Ms. Hartung,

conspired with John/Jane Doe Federal Employees *to do anything*, much less to violate Section

1985. Dismissal is proper where a conspiracy claim under Section 1985 "allege[s] absolutely no

facts to support [the] claim." McClain, 659 F.2d at 872.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8]

be GRANTED as it relates to Plaintiff's Section 1985 conspiracy claim.

### c. Federal Tort Claims Act Claims

Plaintiff alleges that the United States 1) negligently failed to ensure the safety of the

toilets at FMC Rochester, (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 30); 2) negligently failed

to ensure that emergency alarms were in good working order, (Id. at ¶ 31); 3) negligently failed

to timely respond after Plaintiff activated the emergency alarm, (Id. at ¶¶ 31-32); and 4)

negligently failed to stock the necessary medical supplies, in particular tourniquets. (Id. at ¶ 33).

The United States cannot be sued without its consent. Dalehite v. United States, 346 U.S.

15 (1953). However, the FTCA functions as a waiver of the federal government's sovereign

---

[20] Plaintiff does allege that two correctional officers threatened him with retribution should he file an administrative complaint regarding the incident. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 27). However, Plaintiff does not allege that these threats form the basis of his Section 1985 claim. (See Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 45). Even if Plaintiff's claim did arise from these alleged threats, Plaintiff has not named either of the correctional officers as a defendant, and has not alleged any facts to suggest that the named individual Defendants or any John/Jane Doe Federal Employees conspired with the correctional officers in this record.
[21] Plaintiff only generally alleges, without any specific supporting factual allegations, that the individual Defendants deprived him of "his right of equal protection of the laws." (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 45). However, here again these "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681; see also Twombly, 550 U.S. at 554-55.

immunity for suits against the United States[22] for negligence.  28 U.S.C. § 1346(b); 28 U.S.C. §

2674.  Under the FTCA, an individual can sue the United States for damages

> for injury . . . caused by the negligent or wrongful act or omission of any
> [Government employee] while acting within the scope of his . . . employment,
> under circumstances where the United States, if a private person, would be liable .
> . . in accordance with the law of the place where the act or omission occurred.

18 U.S.C. § 1346(b).

To demonstrate a negligence claim under Minnesota law,[23] a Plaintiff must allege "(1) the

existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty

is the proximate cause of his injury."  Myhre v. Fannie Mae, Civ. No. 10-3738 (ADM/FLN),

2010 U.S. Dist. LEXIS 136788, at *8 (D. Minn. Dec. 27, 2010) (Montgomery, J.) (applying

Minnesota law).  As a general rule, a possessor of land has an affirmative duty to exercise

reasonable care in inspecting and maintaining the premises in a reasonably safe condition.

Mattson v. St. Luke's Hosp., 252 Minn. 230 (1958).  In cases where a plaintiff alleges that a

dangerous condition existed on a landowner's property causing him or her to be injured, the

plaintiff must prove that the landowner had actual or constructive knowledge of the dangerous

condition in order to establish the landowner's duty to use reasonable care to remove it.  Messner

v. Red Owl Stores, 238 Minn. 411, 413 (Minn. 1953); Otto v. City of St. Paul, 460 N.W.2d 359,

362 (Minn. Ct. App. 1990).  Constructive knowledge may be established through evidence that a

hazardous condition was present for a sufficient period of time as to constitute reasonable notice

of the hazard.  Anderson v. St. Thomas More Newman Ctr., 287 Minn. 251 (1970).

---

[22] The FTCA allows the Plaintiff to sue the United States for tort claims, but not its individual employees, because federal employees have absolute immunity from common law tort claims arising out of acts they undertake in the course of their official duties.  Osborn v. Haley, 549 U.S. 225, 229 (citing the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679(b)(1)).

[23] The law of the state where the alleged tortious conduct occurs governs whether the United States breached its duty of care.  See Kruchten v. United States, 914 F.2d 1106, 1107 (8th Cir. 1990) ("The law of the state in which the alleged tort occurred – in this case, Minnesota – governs all substantive issues in a Federal Tort Claims case.").

### i. Toilet Defect Claim

Plaintiff only generally and in a conclusory fashion alleges that the United States "had a duty to ensure . . . that the toilets were safe to use," and that the United States "breached that duty by failing to ensure that the toilet was in good operating order." (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 30.) This claim cannot survive Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Plaintiff has failed to plead any facts that would support the reasonable inference that the United States breached the duty of care because it had either actual or construct notice as to any defect in the Unit 9-3 bathroom toilet prior to its collapse on May 28, 2009. Put simply, Plaintiff has alleged no *facts* to support this claim. Plaintiff merely concludes that

> Defendants did not have a program in place to inspect toilets for cracks or deterioration. While they had cleaners, they were not trained in how to inspect a toilet for cracks or deterioration, therefore, defendants did not look inspect [sic] the toilet to see if it was safe or if it would deteriorate upon flushing.

(Id. at ¶ 16). However, the United States is not automatically liable for any injury that befalls any person at FMC Rochester. See, e.g., Patriotic Ins. Co. v. Franciscus, 55 F.2d 844, 847 (8th Cir. 1932) ("the landlord is not an insurer"). Rather, Plaintiff must "establish that the operator of the premises had actual knowledge of the defect causing the injury or that [the defect] had existed for a sufficient period of time to charge the operator with constructive notice of its presence." Wolvert v. Gustafson, 275 Minn. 239, 241 (1966). Under Minnesota law, "speculation as to who caused the dangerous condition, or how long it existed, warrants judgment for the landowner." Rinn v. Minnesota State Agric. Soc., 611 N.W.2d 361, 365 (Minn. Ct. Ap. 2000).

Here, Plaintiff has not plead *any* facts that the United States had either actual or constructive notice of any defect in the toilet. Plaintiff does not allege that there were visible

cracks or other signs of stress that would indicate that the toilet was unstable, nor does he allege

that the United States had constructive notice the toilet might disintegrate.  In order to establish

that the United States had notice of the toilet's alleged condition, Plaintiff must allege, beyond

mere conclusory speculation, "that the hazard existed for a reasonable period of time before the

actual accident occurred such that Defendants in the exercise of reasonable care could have been

expected to remedy the problem or place a warning sign near" the hazard.  Baez, 2011 U.S. Dist.

LEXIS 103513, at *31.[24]

Plaintiff here does nothing more than merely recite the elements of the negligence claim

– duty ("Defendants had a duty to ensure . . . that the toilets were safe to use") (Ex. Mot. Am.

Compl. [Docket No. 43] at ¶ 30), breach ("[t]hey breached that duty") (Id.), injury and proximate

cause ("Because of said breach, the toilet . . . disintegrated upon flushing and caused significant

damage to Plaintiff") (Id.) – strung together into a legal conclusion.  Although the Plaintiff is

entitled to reasonable inferences in his favor, Maki, 383 F.3d at 742, "the tenet that a court must

accept as true all allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Iqbal, 556 U.S. at 678; see also Zutz v. Nelson, 601 F.3d 842, 851

(8th Cir. 2010) ("'mere conclusory statements'  . . . do not suffice to state a plausible cause of

action") (citing Iqbal, 556 U.S. at 678); reh'g denied, reh'g en banc denied Elseth v. Nelson,

2010 U.S. App. LEXIS 27470 (8th Cir. May 27, 2010); cert. denied 131 S. Ct. 524 (2010).  By

failing to allege facts sufficient to prosecute its claim, Plaintiff has failed to state a FTCA claim

concerning the failure of the toilet itself.

---

[24] Nor is this a case of *res ipsa loquitor*, as any defect in the toilet could have been the result of a manufacturing
defect just as easily as from a failure to maintain.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be GRANTED as it relates to Plaintiff's FTCA claim concerning the toilet collapse.

### ii. Emergency Alarm Claim

Plaintiff alleges that the United States "had a duty to ensure that the emergency alarm in the bathroom could be used easily by someone needing assistance," and that the United States "breached their duty by cutting the emergency cord or allowing it to be cut so that it could not be easily pulled by an inmate . . . in the event of an emergency." (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 31.) Plaintiff further alleges that the United States "also breached their duty by failing to repair the emergency alarm after it had been tampered with." (Id.)

Like the claim concerning the toilet, this claim is subject to Minnesota law concerning a landowner's duty to cure a defect about which the landowner had actual or constructive knowledge. See Part II.C.2.c.i, supra. However, here the Plaintiff pleads the minimal facts necessary to be permitted to further prosecute his claim. Plaintiff alleges that, at the time of the May 28, 2009, incident, the cord used to activate the emergency alarm "had been cut such that about one inch of cord hung down; the end of the cord did not attach to a ball or anything else to make activation of the alarm easy." (Id. at ¶ 15.) Plaintiff further asserts that the cord on the emergency alarm in this bathroom, as well as the cords of other emergency alarms throughout the prison, "had been cut for a number of months before the incident; in fact, he cannot recall ever seeing a longer cord, except for right after his injury when the cut emergency cord was replaced by a full cord with the ball attached at the end." (Id.) The Court can draw the reasonable inference that the emergency alarm cords are in plain sight and that the condition of a cord – either intact, or cut – should be obvious. Larson v. United States, Civ. No. 01-1580 (DSD/SRN), 2005 U.S. Dist. LEXIS 35208, at *11 (D. Minn. Apr. 14, 2005) (Doty, J.) ("A

danger is obvious if it is visible" (applying Minnesota law)). "Landowners are not liable for harm caused by known and obvious dangers *unless the landowner should anticipate the harm despite its obvious nature*." (Id. at *10 (emphasis added)).

Here, Plaintiff has plausibly asserted that the United States, having previously installed emergency alarms, owed a duty to inmates and staff of FMC Rochester to keep those alarms in proper working order. The United States argues that "Plaintiff has offered no detailed factual allegations to support his assertion that a reasonable inspection would have revealed a defect in . . . the pull string." (Defs.' Mem. Supp. Mot. Dismiss [Docket No. 10] at 23; see also Id. at 24 ("Plaintiff has not plausibly alleged that the Defendants had actual or constructive notice of any defect in . . . the emergency pull string that would have required [its] replacement or repair")). For purposes of the Defendants' Rule 12(b)(6) motion to dismiss, the Court accepts as true Plaintiff's assertion that the cord on the emergency alarm in the Unit 9-3 bathroom had "for a number of months before the incident" been cut. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 15). Under Minnesota law, "[c]onstructive knowledge may be established by showing that a condition was present for such a period as to constitute constructive notice of the hazard." Larson, 2005 U.S. Dist. LEXIS 35208, at *13-14 (citing Anderson, 287 Minn. 251). Thus, Plaintiff has pleaded facts sufficient to establish that the United States had constructive knowledge of the defect in the emergency alarm and, therefore, a duty to remedy that defect. Plaintiff also plausibly alleges that the United States breached that duty by not repairing the cut cords on the emergency alarms. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 15). Finally, Plaintiff asserts that as a result of the cord being cut he was unable to immediately activate the emergency alarm, and that the delay injured him by delaying the arrival of medical assistance.

(Id. at ¶ 21). These allegations are sufficient for this claim to survive the Defendants' motion to dismiss.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be DENIED as it relates to Plaintiff's FTCA claim concerning the emergency alarm cords.

### iii. Slow Response Claim

Plaintiff alleges that the United States "had a duty to ensure that . . . staff would immediately respond to the emergency if the emergency cord was pulled," (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 31), and that the United States "breached their duty to promptly respond to an emergency and only responded after an inmate told them of the emergency." (Id. at ¶ 32.) Plaintiff further alleges that, as a result of said breach, treatment of his injuries was delayed and he incurred "substantial injuries to his person." (Id.)

The United States asserts that this is akin to a medical malpractice claim and that, as such, Plaintiff failed to meet the minimum requirements for such a claim under Minnesota law by failing to file the required affidavit of expert review. (Defs.' Mem. Supp. Mot. Dismiss [Docket No. 10] at 21-22 (citing Minn. Stat. § 145.682). However, the Court reads the Amended Complaint consistent with Plaintiff's counsel's statement on the record during the hearing on November 27, 2012, that Plaintiff is not arguing that employees of the United States were negligent in the medical care they provided, but instead, asserts that they were negligent in failing to timely respond to the emergency alarm. (See also Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 32 ("Defendants did not timely respond to help him; rather, another inmate responded and had to yell and bang on walls in order to get FMC-Rochester/BOP staff to respond to the emergency")). Since the Plaintiff is not seeking to assert a medical malpractice claim as part of

his FTCA pleadings, an affidavit of expert review pursuant to Minn. Stat. § 145.682 (2009) is not required.

Consequently, the Court only need review the Plaintiff's Amended Complaint to see if he has pleaded enough facts to support a routine negligence theory. Here, Plaintiff has plausibly pleaded that employees of the United States at FMC Rochester have a duty to timely respond to the emergency alarm. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 31). Plaintiff further asserted that employees of the United States did not immediately respond, and that he was injured by their delay. (Id. at ¶ 32). These allegations are sufficient for this claim to survive the Defendants' motion to dismiss.[25]

Accordingly, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be DENIED as it relates to Plaintiff's FTCA claim concerning the response time of FMC Rochester employees.

### iv. Tourniquets Claim

Plaintiff alleges that the United States had a duty "to ensure that they had the proper medical tools necessary to provide needed care," and that the United States breached that duty by failing to keep on hand one or more tourniquets, which could have been used to stanch Plaintiff's bleeding. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 33).

Here, Plaintiff has plausibly pleaded that employees the United States had a duty to ensure that FMC Rochester has on hand the tools necessary to treat routine or otherwise predictable medical emergencies. (Ex. Mot. Am. Compl. [Docket No. 43] at ¶ 33).[26] Plaintiff further asserts there were no tourniquets available at FMC Rochester on May 28, 2009, and that

---

[25] The fact that these allegations of negligence are sufficient to survive a motion to dismiss does not mean that they are sufficient to show the violation of a constitutional right. See Part II.C.2.a, supra.

[26] Although Plaintiff does not describe the precise nature of the duty, the Court, drawing reasonable inferences in favor of the Plaintiff, finds that Plaintiff has alleged that the United States has a duty to ensure that the medical employees of FMC Rochester have the tools and supplies necessary to respond to medical emergencies.

medical staff had to improvise by asking inmates for their belts. (Id. at ¶ 24). Finally, Plaintiff claims that delays in stemming his bleeding, due to the lack of any available tourniquets, exacerbated the harms caused by his initial injury on May 28, 2009. (See Id. at 32). These allegations are sufficient for this claim to survive the Defendants' motion to dismiss.

Consequently, the Court recommends that Defendants' Motion to Dismiss [Docket No. 8] be DENIED as it relates to Plaintiff's FTCA claim concerning the lack of tourniquets at FMC Rochester.

## III.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

1. **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint [Docket No. 23] is **GRANTED**.

2. **IT IS HEREBY RECOMMENDED** that Defendants' Alternative Motion for Summary Judgment [Docket No. 8] be **DENIED without prejudice**.

3. **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss [Docket No. 8] be **GRANTED in part** and **DENIED in part**, as described in Part II.C, above.

Dated: December 11, 2012                                s/Leo I. Brisbois
                                                        LEO I. BRISBOIS
                                                        United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 25, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.

Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.